1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SUSAN DURHAM,                              No.  2:20-cv-1852-KJN

12                  Plaintiff,                  ORDER ON PARTIES' CROSS MOTIONS
                                                FOR SUMMARY JUDGMENT
13          v.
                                                (ECF Nos. 20, 23.)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits under Title II of the Social Security

19   Act.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge

20   ("ALJ") erred in:  (A) failing to offer clear and convincing reasons for discrediting plaintiff's

21   symptom testimony; and (B) failing to provide any evidence to support plaintiff's Residual

22   Functional Capacity ("RFC").  The Commissioner opposed, and filed a cross-motion for

23   summary judgment.

24          For the reasons set forth below, the court DENIES plaintiff's motion for summary

25   judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the

26   Commissioner.

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 15.)

1    **I.      BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**[2]

2              On September 11, 2014, plaintiff applied for Disability Insurance Benefits, alleging an

3    onset date of September 10, 2010.  Plaintiff claimed disability due to "bells palsy, tendonitis,

4    hiatal hernia, 5 herniated disc[s], and fibromyalgia."  (Administrative Transcript ("AT") 395-96,

5    423.)  Plaintiff's application was denied initially and upon reconsideration.  (AT 143-57, 158-72.)

6    Plaintiff sought review of these denials with an ALJ on March 1, 2017.  (AT 111-42.)  The ALJ

7    issued an unfavorable decision on August 15, 2017.  (AT 173-96.)  Plaintiff appealed to the

8    Appeals Council, who remanded for reevaluation of any mental functional limitations and to

9    determine if plaintiff can return to past work, or to obtain vocational expert ("VE") testimony to

10   determine if any jobs would accommodate any mental impairments found.  (AT 197-203.)  At a

11   second hearing, plaintiff testified about her conditions, and a VE testified regarding the ability of

12   a person with plaintiff's impairments to perform various jobs.  (AT 53-110.)

13             On June 19, 2019, the ALJ issued a decision determining plaintiff was not disabled.  (AT

14   9-36.)  As an initial matter, the ALJ determined plaintiff met insured status through June 30,

15

16   [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
     Security program.  42 U.S.C. §§ 401 et seq.  Disability is defined, in part, as an "inability to
17   engage in any substantial gainful activity" due to "a medically determinable physical or mental
     impairment. . . ."  42 U.S.C. § 423(d)(1)(a).  A parallel five-step sequential evaluation governs
18   eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S.
     137, 140—42 (1987).  The following summarizes the sequential evaluation:
19

20             **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the
               claimant is found not disabled.  If not, proceed to step two.
21             **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step
               three.  If not, then a finding of not disabled is appropriate.
22             **Step three**: Does the claimant's impairment or combination of impairments meet
               or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
23             claimant is automatically determined disabled.  If not, proceed to step four.
               **Step four**:  Is the claimant capable of performing past relevant work?  If so, the
24             claimant is not disabled.  If not, proceed to step five.
               **Step five**:  Does the claimant have the residual functional capacity to perform any
25             other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
26
27   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in
     the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The
28   Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2017.  (AT 15.)  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful

activity since 2011.  (Id.)  At step two, the ALJ determined plaintiff had the following severe

impairments:  obesity, lumbar and cervical facet arthritis, right sacroiliac joint degeneration, left

partial thickness rotator cuff tear, depression, and anxiety.  (AT 15-19.)  The ALJ also found the

following non-severe impairments:  right ankle lateral ganglion cyst, minimal subacromial

bursitis and minimal hypertrophic degeneration of the acromioclavicular joint of the right

shoulder, esophagitis, antral gastritis, large hiatus hernia, migraine headaches, thoracic

neuropathy, chronic pain syndrome, bell's palsy, PCOS, otitis media, tinea corporis, and anemia.

(Id.)  At step three, the ALJ determined plaintiff's severe mental impairments were "mild" to

"moderate," and did not meet or medically equal the severity of an impairment listed in Appendix

1.  (AT 19-21) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  The ALJ then found plaintiff

had the RFC to perform less than a full range of light work, except she:

> was able to lift and carry 20 pounds frequently[;] was able to lift
> and carry 20 pounds frequently and 25 pounds occasionally[;] was
> limited to occasional climbing of ramps and stairs[;] could not
> climb ladders, ropes, or scaffolds[;] was unlimited in balancing, but
> was limited to occasional stooping and to frequent kneeling,
> crouching, and crawling[;] was limited to occasional reaching with
> her left, non-dominant, upper extremity[;] was limited to frequent
> interaction with supervisors and coworkers, and to only superficial
> interaction with the public[;] was limited to a workplace with no
> more than occasional changes to the workplace setting and routine[;
> and] required a sit-stand option, alternating every 30 minutes
> without time off-task.

(AT 21.)  In reaching this conclusion, the ALJ considered plaintiff's intense, persistent, and

limiting symptoms alongside the medical evidence and opinions of state agency medical and

psychological consultants.  (AT 21-28.)  The ALJ assigned "great weight" to the state agency

medical consultants' opinions with "some modification," (requiring a "sit-stand option,") and

"partial weight" to the psychological consultants' opinions.  (AT 25, 27.)  The ALJ found the

alleged severity and limiting effects of plaintiff's reported symptoms were "not entirely

consistent" with the medical evidence and other evidence in the record.  (AT 21-25.)  The ALJ

concluded at step four plaintiff was unable to perform past relevant work, but there were jobs

existing in significant numbers in the national economy she could perform.  (AT 28-30.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 20, 23.)

## II.    LEGAL STANDARD

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, the court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F.3d at 1048.

## III.    ISSUES PRESENTED

Plaintiff argues the ALJ erred in failing to:  (A) provide clear and convincing reasons for discrediting plaintiff's symptom testimony; and (B) provide "any evidence" to support the RFC. (ECF No. 20 at 6-17.)  Plaintiff seeks a remand for benefits or further proceedings.  (Id. at 18.)

The Commissioner disagrees, arguing the decision provides substantial evidence to support the ALJ's assessment of:  (A) the subjective evidence because plaintiff's allegations were inconsistent with the medical evidence, plaintiff's daily activities, and the medical opinion evidence; and (B) the physical opinion evidence because the expert opinions from the medical consultants were consistent with the medical record.  (ECF No. 23 at 5-11.)  Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and free from reversible error, which should result in affirmance.  (Id. at 11.)

## IV.    DISCUSSION

### A.  The ALJ properly identified and rejected plaintiff's subjective symptom testimony.

Plaintiff alleges the ALJ failed to provide clear and convincing reasons to discount plaintiff's symptom testimony.  (ECF No. 20 at 10.)  Plaintiff asserts the ALJ "only" cited to the

4

medical record and treatment notes when discounting the testimony, and the "massive record" does not support the ALJ's claim plaintiff does not frequently attend to her ailments.  (Id.)

**Legal Standards**

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability.  20 C.F.R § 404.1529(a).  If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose.  See Treichler v. Comm'r, 775 F.3d 1090, 1106 (9th Cir. 2014).  In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony."  Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record.  See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms;

1   however, it is a factor the ALJ may consider.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th

2   Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

3          **Analysis**

4          At her second hearing, plaintiff testified about her back, neck, shoulder, hand, and spine

5   pain; gastrointestinal pain; migraine headaches; and mental health symptoms.  (See e.g., AT 21-

6   22, 70-92.)  Plaintiff testified her worst impairments relate to her back and shoulder pain.  (AT

7   72.)  Plaintiff primarily argues the lack of medical evidence was the sole basis for the ALJ to

8   discredit plaintiff's symptom testimony.  (ECF No. 20 at 10.)  Contrary to plaintiff's assertion the

9   ALJ found, in addition to the lack of medical evidence, several reasons for discounting plaintiff's

10  testimony, including conservative treatment, and conditions managed with medication.  (AT 23-

11  27.)  See Tommasetti, 533 F.3d at 1040; Lingenfelter, 504 F.3d at 1040; Rollins, 261 F.3d at 857.

12  Further, to the extent the decision lacks any clarity, the rationale is discernable.  See Molina v.

13  Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with

14  less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

15         Beginning with plaintiff's testimony related to her back, neck, shoulder, and spine, the

16  ALJ noted the diagnoses from various physicians, including neuropathic spondylopathy of the

17  lumbar spine and right sacroiliac joint degeneration.  (AT 23, citing AT 779, 790, 792-93, 965,

18  987.)  The ALJ recognized diagnostic tests in 2014 revealed mild reversal and narrowing within

19  plaintiff's cervical spine.  (Id., citing AT 558, 851.)  However, the ALJ also noted nerve

20  conduction and electromyography studies of her upper extremities were normal in October 2015.

21  (Id., citing AT 722-734.)  Plaintiff only noted pain in her left shoulder, testifying her right

22  shoulder is "okay."  (AT 17, 123.)  The ALJ also observed a left shoulder x-ray from November

23  2018 was negative.  (AT 23, citing 1634.)  Inconsistency with medical records is permissibly

24  included in the ALJ's resolution of plaintiff's symptom testimony.  See Rollins, 261 F.3d at 857.

25         The ALJ also noted that many of plaintiff's symptoms were treated conservatively.

26  Regarding her back and shoulder pain, the ALJ noted plaintiff received medial branch blocks,

27  nerve block injections, and rhizotomy, along with pain medication and outpatient visits.  (AT 24.)

28  Additionally, the ALJ noted in June 2015 plaintiff reported a transcutaneous electrical nerve

stimulation (TENS) unit, medication, and ice tends to improve her symptoms.  (Id.)  Plaintiff testified her doctor said "absolutely no" back surgery.  (AT 21-22, citing AT 90.)  Although the record shows plaintiff has a history of left shoulder pain, the ALJ found the record did not indicate plaintiff had any operative procedures, nor did she receive physical therapy for the left shoulder.  (AT 23.)  In fact, plaintiff only received some injections into the shoulder joint.  (AT 23, citing 1064.)  See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); see e.g., Freeman v. Comm'r, 2017 WL 3581925, at *6 (E.D. Cal. Aug. 18, 2017) (finding the ALJ properly considered conservative treatment, specifically noting "plaintiff was not a surgical candidate.").  Plaintiff also complained of numbness in her hands, which she believed was related to her neck.  (AT 21, 73-74.)  The ALJ noted normal nerve conduct and electromyography studies, and the neurologist suggested protective elbow pads for possible ulnar neuropathy.  (AT 17, citing 727, 733.)  See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ noted other times plaintiff received treatment she deemed conservative, including for gastritis and a large hiatal hernia.  (AT 24.)  Specifically, plaintiff's treatment for such impairments included anti-reflux measures, such as diet, weight loss, and smoking cessation. (Id.)  Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment.  See Tommasetti, 533 F.3d at 1039-40 (finding plaintiff responded favorably to conservative treatment, including physical therapy and the use of anti-inflammatory medication, a TENs unit, and a lumbosacral corset undermined plaintiff's report regarding the disabling nature of his pain).  Further, the ALJ found treatment notes of plaintiff's history of medication noncompliance relating to her gastritis and other impairments.  (AT 17, citing AT 671.)  see Id. at 1039 ([T]he ALJ may consider . . . [the] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . .").

Next, the ALJ spoke to plaintiff's alleged daily headache symptoms, noting plaintiff's

"headaches have been mostly treated with medications, including Topamax, which appears to have decreased the frequency of the migraines to approximately one and occasionally two in a week in October 2015." (AT 18, citing 727-28.)  Plaintiff also received nerve blocks in January 2017, but the ALJ noted there is no indication she continued to receive them on a regular basis. (AT 18, citing 1170.)  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (discrediting plaintiff's subjective symptom testimony for lack of consistent treatment).  The ALJ found no evidence indicating any significant neurological conditions related to her migraines and headaches, nor any evidence indicating hospitalization.  (AT 18.)  See Parra, 481 F.3d at 750-51 (discounting plaintiff's credibility when medical reports established a non-severe impairment and conservative treatment); see, e.g., Warn v. Colvin, 2013 WL 943411, *16 (E.D. Cal. March 11, 2013) (citing "plaintiff receives conservative treatment…and has never been hospitalized.")

The ALJ concluded by discussing plaintiff's mental health symptoms including:  "anxiety, depression, irritability, hopelessness, helplessness, crowd avoidance, crying spells, panic, paranoia, poor sleep, racing thoughts, stress, and decreased need for sleep." (AT 26.)  Although plaintiff had numerous examinations, the ALJ properly noted the treatment notes do not support the allegations and mostly show normal findings.  (AT 26, citing 534-65.)  The ALJ explained plaintiff's mental symptoms were stable with relatively conservative mental health treatment. (AT 26.)  See Tommasetti, 533 F.3d at 10439-40; see also, e.g., Althoff-Gromer v. Comm'r, 2019 WL 1316710, *12 (E.D. Cal. March 22, 2019) (finding the ALJ properly discounted plaintiff's symptom testimony for conservative treatment when mental health treatment was "limited to outpatient visits and effective psychiatric medications.").  The ALJ also noted plaintiff testified at the hearing she had yet to start therapy.  (AT 27.)  See Burch, 400 F.3d at 681 (discrediting plaintiff's subjective symptom testimony related to her depression and fatigue for lack of treatment); see also Tommasetti, 533 F.3d at 1039 ([T]he ALJ may consider…[the] unexplained or inadequately explained failure to seek treatment . . . .");  see, e.g., Mendoza v. Colvin, 2016 WL 4126706, *10 (E.D. Cal. Aug. 2, 2016) (finding the ALJ permissibly discounted plaintiff's testimony because her mental health treatment was "sporadic at best").

In addition to her primary argument, plaintiff contends the ALJ erred in stating "[s]he

1   expected to see 'restrictions' placed on the plaintiff in the record if plaintiff's testimony was to be

2   believed." (ECF No. 20 at 10.)  However, it appears ALJ was simply noting the treatment notes

3   do not indicate any restrictions, which is an appropriate inquiry for an ALJ assessing credibility.

4   <u>See</u> 20 C.F.R § 404.1529(c)(3) (". . . any symptom-related functional limitations and restrictions

5   that your medical sources or nonmedical sources report. . . ."); <u>see also</u> <u>Tommasetti</u>, 533 F.3d at

6   1040 (noting it is appropriate for the ALJ to consider whether the alleged symptoms are

7   consistent with the medical evidence of record").

8        Finally, plaintiff contends the ALJ conflagrates "stable" with symptom free or able to

9   work. (ECF No. 20 at 10.)  In determining the severity and limiting effects of plaintiff's reported

10  symptoms are not as significant as alleged, the ALJ stated "the foregoing summary of [plaintiff's]

11  symptoms and treatment for her severe physical impairments shows that her physical symptoms

12  were relatively stable and controlled with the prescribed treatment regimen." (AT 25.)  Plaintiff

13  relies on <u>Lule v. Berryhill</u>, finding the ALJ erred in evaluating the condition because stability

14  alone does not support a conclusion the claimant is "able to perform work for an eight-hour day."

15  2017 U.S. Dist. LEXIS 19392, at *18-19, 2017 WL 541096 (E.D. Cal. Feb 9, 2017); <u>see also</u>

16  <u>Plummer v. Berryhill</u>, No. 1: 16-cv-01137-JLT (E.D. Cal. Mar. 23, 2018) (finding the ALJ erred

17  by equating "stability" with "functionality" without identifying any evidence supporting the

18  conclusion that treatment controlled symptoms).  In <u>Lule</u>, plaintiff's doctor opined her condition

19  was "stable and not worsening" but believed plaintiff had moderate limitations with her daily

20  activities and could only sit, stand, or walk for "less than 2 hours" in an eight hour day.  <u>Lule</u>,

21  2017 U.S. Dist. LEXIS 19392, at *18-19.  Here, however, the ALJ also relied on the state

22  physician reports, assigning them "great weight." (AT 25.)  These reports opined plaintiff "could

23  stand and/or walk for a total of about six hours and sit for about six hours in an eight-hour

24  workday," and "occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds."

25  (<u>Id.</u>)  This opinion is significantly different than the opinion given in <u>Lule</u>; therefore, the ALJ did

26  not conflagrate "stable" with symptom free or able to work.  However, even accepting plaintiff's

27  contention arguendo, it was harmless as the undersigned has already found the ALJ properly

28  relied upon other reasons to discount plaintiff's testimony, as noted above.  <u>See</u> <u>Molina</u>, 674 F.3d

at 1115 (noting courts find harmless error when "there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'").

In sum, the ALJ adequately summarized plaintiff's hearing testimony and permissibly concluded that while her symptoms could reasonably be expected to cause the alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AT 22-23.) Critically, the ALJ supported this conclusion with legally sufficient reasons for rejecting the plaintiff's more severe subjective complaints. See Tommasetti, 533 F.3d at 1040; Molina, 674 F.3d at 1121.

**B. The ALJ supported the RFC with substantial evidence and had no further duty to develop the record.**

Plaintiff asserts the ALJ did not support the RFC with substantial evidence, arguing the ALJ relies on two state agency medical consultants' opinions, which predate three years of medical developments. (ECF No. 20 at 11-15.) Plaintiff further argues these additional medical records triggered the ALJ's duty to develop the record with updated opinions. (AT 15.)

**Legal Standard**

A claimant's RFC is "the most [claimant] can still do despite [claimant's] limitations." and must be "based on all the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(1). "The ALJ must consider a claimant's physical and mental abilities, [§ 404.1520(b) and (c)], as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, [§ 404.1520(e)]." Garrison, 759 F.3d at 1011. At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Id.

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Mayes v. Massanari, 276 F.3d 453, 559-60 (9th Cir. 2001). The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. Id.

1    **Analysis**

2        Plaintiff argues the RFC is not supported by substantial evidence in the record because no

3    physician reviewed the subsequent treatment notes related to plaintiff's "chronic back and neck

4    pain, arm pain, and hernia." (ECF No. 20 at 15-16.)  According to plaintiff, this lack of physician

5    review triggered the ALJ's duty to develop the record, by obtaining a third consultative exam, and

6    such failure to properly develop the record resulted in a substantial likelihood of prejudice. (Id.)

7    Specifically, plaintiff cites to a 2016 report of "acromioclavicular joint degeneration and

8    tenderness of the over laying muscle of the left shoulder and a prescription for elbow pads that

9    must be worn 24 hours a day." (See AT 985, 1649.)  Plaintiff also cites to treatments, including

10   injections and two rhizotomies in late 2015, long term narcotic pain management in 2016, and

11   nerve blocks in 2017. (See also AT 987, 1651, 950, 959, 981, 983, 1053, 1079, 1086, 1170,

12   1651.)  Finally, plaintiff asserts a diagnosis of a large hiatal hernia following the opinions. (See

13   AT 1179.)  Plaintiff contends a substantial likelihood exists that with a third consultative

14   evaluation, the ALJ would have assessed a more restrictive RFC, "[p]articularly due to

15   [plaintiff's] severe hernia." (ECF No. 20 at 1516.)

16       A review of the ALJ's decision shows the ALJ discussed the records plaintiff identifies

17   along with the other objective medical evidence.  Despite plaintiff's contention her impairments

18   worsened, the ALJ noted the subsequent treatment notes, which continued to support the medical

19   consultants' opinions and the "great weight" the ALJ afforded them. (Id.)  See 20 C.F.R.

20   § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a

21   whole, the more weight we will give to that medical opinion."); see also, e.g., Sportsman v.

22   Colvin, 637 F.App'x 992, 995 (9th Cir. 2016) (finding it is not in error for a state agency

23   consultant to fail to review subsequent medical records, if the ALJ reviews the entire record and

24   concludes the later-dated medical records are consistent with the overall medical evidence).

25   Although the ALJ did not explicitly state the subsequent medical records are consistent with the

26   overall medical record, it is easily discernable that this is the intent of the decision. See Molina,

27   674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we

28   must uphold it if the agency's path may reasonably be discerned.")  The ALJ specifically noted

1  doctors treated plaintiff with a large hiatal hernia in October 2018, but "later considered [the

2  hernia] small."  (AT 16, citing AT 1523, 1624.)  Further, plaintiff already received two

3  consultative exams reporting similar findings after examination and review of the medical

4  records.  See, e.g., Meadows, 807 F.App'x at 647 ("There is always some time lapse between a

5  consultant's report and the ALJ hearing and decision, and the Social Security regulations impose

6  no limit on such a gap in time.")  Based on the ALJ's review of the subsequent medical evidence,

7  this evidence would not have changed the medical consultants' opinions or the ALJ's

8  decision.  See, e.g., Morin v. Saul, 840 F.App'x 77, 79 (9th Cir. 2020) ("While the state agency

9  consultants did not review evidence that post-dated their reports, [plaintiff] has not shown that

10  this process resulted in any harmful error, especially as the ALJ had the opportunity to review the

11  entire record.") (citing Brown-Hunter, 806 F.3d at 492)).

12      To the extent plaintiff argues the ALJ failed to fully develop the record, her argument is

13  unpersuasive.  Here, there is no indication there was any ambiguity or the record was inadequate;

14  in fact, the ALJ discussed all subsequent medical records plaintiff identifies.  (AT 15-25.)

15  Because the medical evidence regarding Plaintiff's impairments is neither ambiguous nor

16  inadequate, the ALJ had no duty to develop the record further.  Mayes, 276 F.3d at 459.

17  **V.    CONCLUSION**

18      Having resolved plaintiff's claims of error, the court finds that the ALJ's decision

19  supported by substantial evidence in the record as a whole.  Buck, 869 F.3d at 1048.

20  Accordingly, IT IS HEREBY ORDERED that:

21      1.    Plaintiff's motion for summary judgment (ECF No. 20) is DENIED;

22      2.    The Commissioner's cross-motion (ECF No. 23) is GRANTED;

23      3.    The final decision of the Commissioner is AFFIRMED, and judgment is entered

24          for the Commissioner; and

25      4.    The Clerk of Court shall CLOSE this case.

26  Dated:  February 1, 2022

27  durh.1852

28  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

1